# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HYDRAULICS INTERNATIONAL, INC. )<br>)<br>    **Plaintiff,**     )<br>)<br>**v.**                                           )<br>)<br>THE UNITED STATES OF AMERICA, )<br>)<br>    **Defendant.**     ) | No. __19-105 C_____ |

## COMPLAINT

Hydraulics International, Inc. ("HII"), pursuant to the Contract Disputes Act ("CDA"), brings this action against Defendant the United States of America, and for its Complaint alleges as follows:

## NATURE OF THE ACTION

1. HII appeals the Contracting Officer's final decision, dated September 18, 2018, finding HII in breach of the Contract (defined below). HII seeks a judgment determining that HII is not in breach of the Contract.

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this Complaint pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), and the CDA.

## THE PARTIES

3. HII is a California corporation. Its principal place of business is in Chatsworth, California.

4.  Defendant the United States of America, for all purposes relevant hereto, acted by and through the Department of the Air Force, Air Force Life Cycle Management Center (the "Agency"), located at the Robins Air Force Base in Georgia.

## FACTUAL BACKGROUND

5.  The MJ-1C is a type of lift truck used to load, transport and unload weaponries and other cargo. HII has extensive experience with the MJ-1C, and has manufactured this MJ-1C model for more than 30 years.

6.  The MJ-1C was built-to-print, and the drawings that the Air Force supplied were 2-Dimensional ("2D") drawings.

7.  In 2001, HII anticipated the need for an electrical model of the MJ-1C and, at its own cost and expense, designed and produced the model at issue in this case, the MJ-1E. The MJ-1E is functionally identical to the MJ-1C, performing identical tasks, and retaining all possible parts identical to the MJ-1C, with the exception of the electric powered pack and associated parts.

8.  The Agency first began purchasing MJ-1Es from HII in 2009.

9.  On September 19, 2015, the Agency awarded Contract No. FA8531-15-D-0004 (the "Contract") to HII. Pursuant to the Contract, HII was to manufacture and supply 62 MJ-1Es, along with certain engineering data, including a Technical Data Package ("TDP") for the MJ-1Es.

10. In 2017, HII submitted the TDP for the MJ-1Es to the Agency. The TDP included, among other things, 2D drawings of the MJ-1Es.

11. On August 2, 2017, the Agency informed HII that, in its view, the TDP was deficient because it did not include 3-Dimensional ("3D") models of the MJ-1Es.

12. The Contract specifies the following with respect to Product Drawings/Models & Associated Lists (D001):

> **BLOCK 16: Section 3.  Product Drawings/Models and Associated Lists:**
> Product drawings/models and associated lists shall be prepared to provide the design, engineering, and manufacturing information necessary to enable the procurement or manufacture of an item essentially identical to the original item. The product shall be defined to the extent necessary for a competent manufacturer to produce an item, which duplicates the physical, interface, and functional characteristics of the original product, without additional design engineering effort or recourse to the current design activity.  Product data shall reflect the approved, tested and accepted configuration of the defined delivered item.  This includes but is not limited to special tooling, interface hardware, special test equipment, and support equipment.

13. The TDP that HII provided satisfied all of the requirements of the Contract. Furthermore, the 2D drawings provided are customary in the applicable industry and were sufficient to allow the Agency to procure interchangeable items.

14. On December 14, 2017, HII responded to the Agency, noting that the Contract did not require HII to submit 3D models.

15. On February 21, 2018, the Agency placed HII on notice of HII's alleged breach of the Contract and demanded cure of the purported defect (i.e., delivery of 3D models of the MJ-1Es).

16.     On March 2, 2018, HII responded to the Agency's February 21, 2018 correspondence, continuing to dispute that the Contract required HII to submit 3D models, but offering to provide the Agency the 3D models that HII had developed using its own funds for internal government purposes only (Limited Rights).

17.     On June 13, 2018, the Agency rejected HII's offer to provide 3D models under Limited Rights and asserted that HII had materially breached the Contract by refusing to deliver the 3D models.

18.     On September 18, 2018, the Agency issued its final decision, determining that (i) the Contract required HII to deliver 3D models; (ii) HII breached the Contract by refusing to deliver 3D models; and (iii) the Agency was entitled to withhold $633,000.00 from HII– the amount the contracting officer determined it would cost to procure 3D models.  A true and correct copy of the final decision is included in Appendix A hereto.

### COUNT I - - CONTRACTING OFFICER'S FINAL DECISION

19.     HII adopts and incorporates by reference the averments of the preceding paragraphs, as if fully set forth herein.

20.     The final decision constituted a claim by the Agency, related to the interpretation of the Contract.  HII is entitled to appeal the final decision on the Agency's claim; it need not submit its own certified claim, and obtain yet another final decision, before doing so.

### PRAYER FOR RELIEF

WHEREFORE, HII requests that this Court:

A. Interpret the Contract and declare that the Contract did not require HII to supply 3D models of the MJ-1E;

B. Declare that the TDP supplied by HII met the requirements of the Contract;

C. Determine that the 3D models developed by HII were not created using government funding;

D. Declare that HII did not default under the Contract by supplying 2D, instead of 3D models, and, therefore, that the Agency has no authority to modify the Contract pursuant to contract clause 52.249-8, *Default (Fixed-Price Supply and Service)* or otherwise to impose any monetary offsets, deductions or penalties;

E. Award HII such other and further relief as this Court may deem just and proper.

Dated: January 18, 2019.

Respectfully submitted,

*/s/ W. Brad English*
W. Brad English
Emily J. Chancey

**OF COUNSEL:**
MAYNARD, COOPER & GALE, P.C.
655 Gallatin Street
Huntsville, Alabama 35801
Telephone: (256) 551-0171
Email: benglish@maynardcooper.com

# Appendix A



**DEPARTMENT OF THE AIR FORCE**
AIR FORCE LIFE CYCLE MANAGEMENT
CENTER ROBINS AIR FORCE BASE
GEORGIA

18 Sep 2018

MEMORANDUM TO: Mr. Gary DiDomenico, Hydraulics International, INC (HII)

FROM: Ms. Shea Hart, PCO, Mission Support Generation/Contract, AFLCMC/WNKAA

SUBJECT: Contract FA853215D0004, CLIN 0005, CONTRACTING OFFICER'S DECISION

You are notified that the Government considers your continued refusal to provide MJ-1E 3-D models to the Government as part of the Technical Drawing Package (TDP), as required by Contract Line Item (CLIN) 0005 of the subject contract, as a failure of performance of the contract and a material breach of the contract's terms. Discussions have been held between you and the Government for and extended time without resolution. Therefore, I now issue this Contracting Officer's Final Determination regarding this matter.

BACKGROUND

On 21 Feb 2018, the I sent HII a Cure Notice regarding the failure to provide a MJ-1E 3-D models as part of the Technical Drawing Package (TDP) as required by Contract Line Item Number (CLIN) 0005 of Contract Number FA853215D0004. This notice specifically referenced the requirement that "product drawing/models" shall be *"defined to the extent necessary for a competent manufacturer to product and item...without additional design engineering effort or recourse to the current design activity."* By letter dated 2 Mar 2018, HII responded to the Cure Notice by stating their disagreement with certain statements contained in the notice and providing background contract information and a historical overview of the corporation and the development of the MJ-1E. HII stated that the 3-D models in dispute were developed using only HII funds and not as part of a Government funded acquisition. HII's response letter further contended that the drawing package provided to the Government, sans 3-D modelling, meets the purpose of procurement for a competent manufacturer to produce a fully functioning item without additional design engineering. While HII asserted that the drawing package submitted was in compliance with the contract requirement, they did offer as an alternative that the disputed models be provided but only for the Government Engineer use and not for future procurement.

On 13 Jun 2018, the Government rejected HII's proposal for resolving this question. The Government stated its disagreement with HII's conclusion that the 3-D models are not a requirement under the terms of the contract and also concluded that there was insufficient support for the statement that the models were created from HII funds.[1] The Government response stated that "The cure notice identified CLIN

---

[1] The issue of whether HII funded the creation of the models is irrelevant to the issue of whether the models are part of the technical data package that was purchased by the Government under this contract. The Government has negotiated a value for the technical data package in the amount of $1,417,753.31 and has reasonable expectations that this would include ALL engineering data, regardless of the source of original funding.

0005 data requirements shall be provided to the Government under this contract as : "PRODUCT DRAWINGS/MODELS AND ASSOCIATED LISTS (D001) IAW ATTACHED DD1423-1 AND STATEMENT OF WORK (SOW) PARA 3.5.4." The DD1423-1 and the SOW identifies the intent, use, and rights of the government for CLIN 0005. The cure response does not meet the requirements of subject contract, CLIN 0005."

It is the Government's position that the relevant contract terms clearly include 3-D models within the technical data package deliverables. In addition to the listed citations in the Cure Notice to HII and the above quoted paragraph, the Government notes the following supporting contract references:

- Block 16, Continuation Sheets, 1. Government Activity and Part Identification. AF Drawing Document 9626025, paragraph 15, states: "Government CAGE Digital Delivery Requirements: The following describes the format required for Air Force CAGE coded 2D drawings and 3D models. A note shall be added to Air Force drawings referencing any models that are used with that drawing. Models created along with Air Force drawings shall have the native drawings in a zipped format along with the models to preserve the links. The view-only and neutral model files shall be delivered in separate files. The final digital delivery shall also comply with the latest revision of Air Force (CAGE 98752) drawing 9579776."

- Block 16, Continuation Sheets, paragraph 22. Inspection of TDP, h, states that: "Both Type 2D and Type 3D TDPs shall open in the appropriate software without regeneration errors or warnings."

- HII Proposal, 19 Dec 2014, p.86-87, IA-332; 252.227-7013 RIGHTS IN TECHNICAL DATA— NONCOMMERICAL ITEMS (FEB2014). HII did not assert for itself "items, components, or processes developed at private expense, identify both the data and each such item, component, or process." Further, HII did not assert any restrictions on the Government's rights to use, release, or disclose technical data and did not list a restriction of "GOVERNMENT PURPOSE' or for "LIMITED RIGHTS".

The contract clauses clearly establish the Government's understanding that it was to acquire Unlimited technical data rights in order to acquire a TDP that allows for "the procurement or production of an item essentially identical to the original item." The terms of the contract are not restricted to non-proprietary data and specifically references all models. Your refusal to provide all relevant engineering data, to include all model data, is contrary to this underlying purpose of the contract.

CONCLUSION

Because the Government negotiated a price for the TDP relying upon HII providing all engineering data required for future production, without regard to proprietary claims, the refusal to provide the 3-D models renders the previously negotiated price for CLIN 0005 unreasonable. HII's Cure Response states that the 3-D models were developed using private funds and propriety assets, but HII entered into the contract without identifying any technical data restrictions or data that they considered to be withheld based on development with private funding. The Government contracted for and anticipated receipt of a complete technical data package, to include all relevant modelling.

Our engineering analysis has concluded that it will cost the Government $633,000.00 (Six-Hundred

Thirty-Three Thousand Dollars) to recreate the 3-D models that are being improperly withheld. This estimate is based upon expenditure of an average of 16 hours per model, for a total of 5,280 man hours at $120.00 per hour. Therefore, a contract modification will be made for cost adjustment for CLIN 0005 for the cost of the Government to develop 3-D models. The authority for this modification is contract clause (contract p.42) 52.249-8, *Default (Fixed-Price Supply and Service)*. A failure to agree with the modified pricing will be a dispute under the Disputes clause (contract p.39) 52.233-1, *Disputes*.

HII has failed to provide the 3-D models as required by the contract agreement. HII is in Default for CLIN 0005 for delivery of a complete TDP, to include 3-D models. HII's contract performance reports will identify the failure of performance.

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number.

With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's—

    (1) Small claim procedure for claims of $50,000 or less or, in the case of a small business concern (as defined in the Small Business Act and regulations under that Act), $150,000 or less; or

    (2) Accelerated procedure for claims of $100,000 or less.

Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in 41 U.S.C. 7102(d), regarding Maritime Contracts) within 12 months of the date you receive this decision.

HART.SHEA.E.1106744358
Digitally signed by HART.SHEA.E.11067443 58
Date: 2018.09.18 08:27:09 -04'00'

SHEA E. HART
Contracting Officer